IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| ANISETO OLIVAREZ, JR., § <br> Institutional ID No. 117457, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> LUBBOCK COUNTY DETENTION § <br> CENTER, *et al.*, § <br> Defendants. § | CIVIL ACTION NO. 5:19-CV-061-BQ |

## **REPORT AND RECOMMENDATION AND ORDER OF TRANSFER**

This case was transferred to the magistrate judge by order dated May 7, 2019. ECF No. 9. In accordance with said order, the undersigned conducted preliminary screening as described in 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and determined that Olivarez's individual capacity claim against Officer Elroy Holmes under the Fourteenth Amendment survived preliminary screening. ECF No. 15. Consequently, the Court entered an order requiring Officer Holmes to answer or otherwise plead to Olivarez's claims. ECF No. 16. Holmes filed his Answer and a "Motion and Brief to Dismiss Official Capacity Claim Pursuant to Rule 12(b)(6)" on September 12, 2019. ECF Nos. 19, 20. As of today's date, all parties have not consented to jurisdiction by the magistrate judge. Upon review of Holmes's Answer, it is the opinion of the undersigned that this matter must be transferred to the district judge for further proceedings. Further, upon review of Holmes's motion, it is the opinion of the undersigned that the motion should be denied as moot or, in the alternative, granted as set forth in more detail below.

1

I.   **Discussion**

A. **Olivarez's Claims**

The undersigned previously found that Olivarez's claim for excessive force survives preliminary screening.[1] *See* Order to Answer 8–9, ECF No. 16. The United States Supreme Court has recognized that a pretrial detainee's use of force claim arises under the Fourteenth Amendment, and "that a pretrial detainee must show only that the force purposefully and knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (abrogating lower courts' application of Eighth Amendment excessive force standards in *Hudson v. McMillian*, 503 U.S. 1 (1992) to pretrial detainees). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness of the force used must be assessed "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security." *Id.* at 2474. Importantly, to state a claim of excessive force under *Kingsley*, a pretrial detainee must show that the physical act of which he complains, i.e., the actual force applied, was intentional, not accidental or negligent:

> That is because, as [the Supreme Court has] stated, "liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (emphasis added); *see also Daniels v. Williams*, 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property."). Thus, if an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim. But if the use of force is deliberate—i.e., purposeful or knowing—the pretrial detainee's claim may proceed.

---

[1] As noted at pg. 6 herein, the Court also concluded that Olivarez's claims against Lubbock County for failure to train and Lubbock County Detention Center "Medical" for deliberate indifference to serious medical needs failed to state a claim for relief and dismissed such claims through the same order. ECF No. 15.

*Id.* at 2472 (citations modified). If the force was used intentionally, then the Court must examine whether the use of force was objectively reasonable from the perspective of the officer who allegedly used force. *Id.* at 2474. The Court considers the following non-exclusive factors in evaluating whether the officer applied reasonable force: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* at 2473.

Here, Olivarez alleges that on August 24, 2017, Lubbock County Detention Center (LCDC) Officer Elroy Holmes used excessive force against him. Compl. 4, ECF No. 1.[2] The use of force allegedly occurred after Holmes saw Olivarez attempt to take a second tray during mealtime. Tr. 2:04:30. Holmes issued Olivarez bunk restrictions for the infraction and ordered Olivarez to come to the guards' desk, but Olivarez refused and instead responded to Holmes's commands with profanity. Tr. 2:06:20, 2:08:10. After Holmes issued additional orders for Olivarez to approach the desk, Olivarez eventually came forward and Holmes directed him to place his hands on the desk so he could be taken to processing. Tr. 2:09:00. When Holmes reached for Olivarez's arm to place him in hand restraints, Olivarez moved his arm in an apparent attempt to speak with Holmes[3]—Olivarez denies any sudden movements—which resulted in Holmes allegedly putting him in a "full nelson," pulling Olivarez's arms up and away from his torso behind his back and temporarily pinning Olivarez's upper body against the desk. Tr. 2:09:30. Olivarez asserts that the

---

[2] Page citations to Olivarez's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

[3] Video surveillance footage confirms the movement.

force Holmes used was excessive and unnecessary (Compl. 4; Tr. 2:10:15) and that he was "seriously hurt" during this altercation (Compl. 4; Tr. 2:28:00).

Following his encounter with Holmes, an LCDC nurse examined Olivarez and prescribed ibuprofen and naproxen. Tr. 2:15:00. After receiving an x-ray, Olivarez claims the x-ray showed that his C5-C6 and C6-C7 vertebrae, as well as his lower back, were "messed up." Tr. 2:18:55. According to Olivarez, a doctor who examined his x-rays told him that the injuries were likely caused by physical trauma. Tr. 2:19:40. Olivarez alleges that these injuries to his neck and back were the result of Holmes's use of force. Compl. 4; Tr. 2:14:00, 2:15:50, 2:18:45.

At this stage of the proceedings, Olivarez's allegations, taken as true, are not patently frivolous and state a claim sufficient to survive preliminary screening, i.e., an excessive force claim under the Fourteenth Amendment against Defendant Holmes. First, the Court notes that Olivarez has alleged that Holmes's use of force was deliberate, thus clearing the initial hurdle to an actionable excessive force claim. *Kingsley*, 135 S. Ct. at 2472. Further, weighing the six factors in determining whether the force was reasonable tips the scales, at the screening stage, in favor of allowing Olivarez's claim to proceed. *See id.* at 2473. In conducting this analysis the Court must take into consideration the degree of Olivarez's perceived resistance, i.e. his arm movement, and whether such movement could reasonably justify the force Holmes allegedly applied.

First, accepting Olivarez's factual assertions as true,[4] it is not clear that Holmes's use of a "full nelson" hold followed by pinning Olivarez against the desk was commensurate with the force needed to gain Olivarez's compliance, particularly when Olivarez alleges the movement was not forceful or threatening. Second, Olivarez alleges injuries that, with factual development, could

---

[4] The Court viewed video footage supplied by LCDC regarding the incident. The undersigned does not find that the video clearly contradicts Olivarez's factual assertions; the Court must therefore accept as true his account of events. *Cf. Scott v. Harris*, 550 U.S. 372, 378–81 (finding that lower court should not have credited the plaintiff's version of events because the video evidence "clearly contradict[ed]" his claims).

exceed the *de minimis* threshold; Olivarez alleges that a doctor indicated damage to Olivarez's C5-C6 and C6-C7 vertebrae was the result of physical trauma. Third, the facts alleged raise an issue as to whether Holmes tempered his use of force—other less potentially harmful methods of restraint may have been available and adequate. The fourth factor, however, weighs in favor of Holmes. Holmes could have reasonably perceived Olivarez's repeated refusal to obey his orders as a potential threat to institutional security that necessitated some degree of force. The fifth factor, based on Olivarez's allegations, again swings the pendulum in Olivarez's favor. The minimal arm movement alleged by Olivarez arguably reduces the threat level that a reasonable officer could have perceived. And sixth, whether Olivarez was actually resisting is, at this juncture, an open question. In his *Spears* hearing testimony, Olivarez denied any type of resistance in the moments prior to Holmes's application of force. Carefully considering these factors, the undersigned has concluded that Olivarez's claim should proceed beyond the screening stage. *See* ECF No. 15; *Lindsey v. Dallas Cty. Sheriff's Dep't*, No. 3:18-CV-1588-M-BH, 2018 WL 7081979, at *4 (N.D. Tex. Dec. 31, 2018) (concluding inmate's allegations that corrections officer choked inmate and slammed his head against wall must be taken as true at screening stage and finding that excessive force claim survived screening); *see also Luke v. Beagron*, Civil Action No. 16-13461, 2016 WL 8740486, at *10–13 (E.D. La. Dec. 28, 2016) (holding inmate's excessive force claim survived screening where he alleged corrections officer dropped a knee into his back to apply restrains even though he was lying on ground and not resisting).

**B. Defendant Holmes's Motion to Dismiss**

On September 12, 2019, Defendant Holmes filed a "Motion and Brief to Dismiss Official Capacity Claim Pursuant to Rule 12(b)(6)." ECF No. 19. Holmes moves for the dismissal of any official capacity claim brought against him arising from Olivarez's allegations that he used

5

excessive force. *Id.* at 1–2. The undersigned recommends that the District Court deny as moot Holmes's motion to dismiss or, in the alternative, grant it to the extent Holmes's Complaint attempts to state an official capacity claim that was not dismissed by this Court's previous order. Even assuming a liberal construction of Olivarez's Complaint gives rise to an official capacity claim against Holmes, the Court's prior dismissal of Olivarez's claim against Lubbock County necessarily disposed of any such claim. Because an official capacity claim against Holmes is "in all respects" a suit against the county,[5] Olivarez must establish that the "[government] entity's policy or custom . . . played a part in the violation of federal law" to state a viable constitutional claim. *Graham*, 473 U.S. at 166 (applying policy element to an official capacity constitutional claim); *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (holding that to establish municipal liability under § 1983, a plaintiff must demonstrate a policymaker, an official policy, and a violation of plaintiff's constitutional rights whose moving force was the policy). This Court's order dismissing Olivarez's claim against Lubbock County expressly found that, inter alia, his Complaint failed to set forth sufficient facts showing the existence of a policy for which the county could be held responsible. *See* ECF No. 15, at 5-11, 15.

## II.     Recommendation

Given the timeframe set forth by the district judge in the referral order, it appears prudent to transfer the case back to the district judge for implementation of a scheduling order. Accordingly, it is the **RECOMMENDATION** of the magistrate judge that (1) a scheduling order should be entered, setting dates certain for pretrial deadlines and filing dispositive motions, and (2) the district judge deny as moot Defendant Holmes's "Motion and Brief to Dismiss Official Capacity Claim Pursuant to Rule 12(b)(6)" (ECF No. 19) or, in the alternative, grant it to the extent

---

[5] Official capacity claims against government officials are "in all respects other than name" a suit against the government entity for whom the official is an agent. *Ky. v. Graham*, 473 U.S. 159, 165–66 (1985).

6

Holmes's Complaint attempts to state an official capacity claim that was not dismissed by this Court's previous order.

It is therefore **ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred back to the docket of the United States District Judge. This case shall hereinafter be designated as Civil Action Number 5:19-CV-061-C.

### III. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated: October 30, 2019

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

7